UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**JOYCE IGLESIAS**,                                    Case No. 3:15-cv-00849-KI

                  Plaintiff,                OPINION AND ORDER

     v.

**CAROLYN COLVIN, Acting**
**Commissioner of Social Security**,

            Defendant.

     Merrill Schneider
     Schneider Kerr Law Offices
     P.O. Box 14490
     Portland, OR 97293

          Attorney for Plaintiff

     Billy J. Williams
     United States Attorney
     District of Oregon
     Janice E. Hebert
     Assistant United States Attorney
     1000 SW Third Ave., Ste. 600
     Portland, OR 97204-2902

Courtney Garcia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

   Attorneys for Defendant

KING, Judge:

  Plaintiff Joyce Iglesias brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying Iglesias's application for disability insurance benefits ("DIB").  I affirm

the decision of the Commissioner.

## BACKGROUND

  Iglesias filed an application for DIB on March 28, 2007, alleging disability beginning

January 1, 2003.  The application was denied initially and upon reconsideration.  After a timely

request for a hearing, Iglesias, represented by counsel, appeared and testified before an

Administrative Law Judge ("ALJ"), at which time she amended her disability onset date to

January 19, 1997.  The ALJ issued a decision finding Iglesias had met the DIB earning

requirements and remanded for a full evaluation of the medical evidence.

  Upon review of the evidence, Iglesias' application continued to be denied.  She appeared

before an ALJ on January 17, 2014.  On March 13, 2014, the ALJ issued a decision finding

Iglesias' impairments arose or were aggravated in connection with her commission of a felony

and, therefore, Iglesias was not entitled to benefits.  This decision became the final decision of

the Commissioner when the Appeals Council declined to review the decision of the ALJ on

March 19, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

However, the agency must comply with 20 C.F.R. § 404.1506(a), which provides: "In

determining whether you are under a disability, we will not consider any physical or mental

impairment, or any increase in severity (aggravation) of a preexisting impairment, which arises in

connection with your commission of a felony after October 19, 1980, if you are subsequently

convicted of this crime."

Page 3 - OPINION AND ORDER

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

**THE ALJ'S DECISION**

The ALJ recognized the state agency consultants' conclusion that Iglesias' marked limitations in activities of daily living, social functioning, and concentration, persistence and pace, due to her depression, anxiety and posttraumatic stress disorder, would direct a finding of disability. However, the ALJ denied Iglesias' application at the second step, finding these impairments were subject to the felony exclusion under 20 C.F.R. § 404.1506(a) and, as a result, Iglesias was not under a disability before June 30, 2001, her date last insured.

**FACTS**

Iglesias was 45 years old as of her alleged onset date. She provided for her three children as a homemaker until she began working for a t-shirt company, at which she handled most duties including bookkeeping from 1984 until 1996. On April 3, 1996, her supervisor confronted her about stealing money from the business. Iglesias was charged with felony embezzlement. She pled no contest and was sentenced to 30 nights in a detention facility, three years' probation, and

ordered to repay the $45,000 she embezzled. She started seeing a counselor in April 1996, two weeks after her employer confronted her.

## DISCUSSION

The only issue in this case is whether Iglesias' severe impairments arose or were aggravated in connection with the commission of a felony. *See* 20 C.F.R. § 404.1506(a) (requiring exclusion from consideration of impairment or aggravation of preexisting impairment that arises in connection with a claimant's commission of a felony). Social Security Ruling ("SSR") 83-21 clarifies that "in connection with" does not require a

> causative connection between the commission of the felony and the disabling condition, but it must be closely related to, or associate with the commission of the offense. In general, the disabling condition (the impairment or the aggravation of a pre-existing impairment) must have occurred at a time and location that is near (i.e., close to the time and place) to the felony. Ordinarily, the decision as to this issue will be obvious . . . . [S]ome nontraumatic impairments may arise in connection with the commission of a felony, since the law does not require that there must be a causative relationship between the commission of the felony and the impairment.

1983 WL 31258 (Jan. 1, 1983).

The ALJ concluded that if Iglesias suffered from depression and anxiety prior to her arrest, her conditions either were controlled or could not have been very severe. The ALJ further commented that "even if the claimant is correct that her mental health conditions existed prior to the criminal activity, the treatment records show that these conditions were significantly aggravated by the felony and subsequent arrest, and the regulation requires that such aggravation of the impairment must be disregarded." Tr. 18.

The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.

Page 5 - OPINION AND ORDER

*Molina*, 674 F.3d at 1110.  There is certainly evidence in the record from which the ALJ could find Iglesias' depression and anxiety were life-long problems.  *See* Tr. 278 (after caught embezzling, Iglesias reported depression her entire life); 288-90 (anxious while working; abuse by employer; physical abuse as child); 487 (no treatment before arrest because busy); 308-394 (in treatment, discussed anxiety over parents' health, husband's health, loss of husband's job, relationship with children, and memories about previous employer).

However, there is also ample evidence in the record to support the ALJ's conclusion that even if Iglesias' mental impairments existed prior to her arrest, they were substantially aggravated by her arrest and subsequent conviction.  Tr. 278 (two weeks after caught, reported being raised in a strong Baptist background, and "cannot believe she has done this, feels much shame and embarrassment"); 280 (checks window whenever she hears a car thinking it is the police); 281 (shame about police arresting her); 287 (much anxiety about impending presentence investigation); 288 (Iglesias has "much remorse over what she did, in fact, she cannot believe that she ever did embezzle money from her employer" and counselor thought conduct "a result of extreme anxiety, anger and bewilderment over abuse by her employer"); 295 (counseling sessions focused on "anxiety, depression and suicidal ideation, which have stemmed from her difficulties during her last employment"); 283 ("constantly worries about what is going to happen to her");  229 (in 1997, Richard A. Truax, M.D., commented "discovery and subsequent consequences of embezzlement were clearly precipitating factors in the development of this woman's depression"); 297 (1997, describing job related dreams); 301 (1997, describing the "TV talking to me--particularly embezzlement cases"); 316 (1998, "worries there is a warrant for her arrest"); 335 (1999 breakdown instigated by call from parole officer extending parole due to

nonpayment; Iglesias went for a knife); 342 (2000, "She's obsessed with the whole issue of the

embezzlement"); 347 (2000, biggest concerns her mother and her employer "and the whole issue

of what happened there"); 352 (2001, "bad dreams again about the people from her work but she

realizes April 3 is coming and this does increase her anxieties"); 355 (discussing "the

embezzlement issue, wonders when her nightmares will stop"); 358 (in 2001, focused on

sentencing date anniversary in October); 363 (2002, describing obsession with April 3 and

described her shame and horror at being caught); 373 (2002, describing terrible nightmares about

being humiliated at her job); 386 (2003, describing anxiety triggers and her "wishes to make

things the way they were before she embezzled the money."  Counselor opined that when the

embezzlement was discovered, Iglesias "made a decision never to make a decision again"); 393

(2004, "much sadness and disappointment and shame regarding how her family has suffered" and

she is responsible; she "feels her entire life has been miserable, though she was able to say when

she married Carlo and was raising her children it wasn't"); 410 (2005, increased nightmares

attributable to stress at home "and the anniversary of the dates of the trial and legal issues which

will remain unresolved emotionally for Joyce forever").

Iglesias argues her lack of mental health treatment prior to getting caught embezzling is

not determinative, citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  As a general

proposition, an ALJ should proceed with caution in concluding a failure to obtain mental health

treatment suggests no mental health impairment.  Here, however, contrary to Iglesias' suggestion,

the ALJ was permitted to consider Iglesias' work activities as inconsistent with her assertions of

disability-level impairment prior to getting caught embezzling.  In addition, at her first

counseling session, Iglesias reported having felt depressed for years, and at her hearing her only

excuse for failing to seek treatment was her busyness.  This evidence suggests Iglesias was aware

of her mental impairments but gave treatment a low priority.  *See Molina*, 674 F.3d at 1114 ("no

medical evidence that Molina's resistance was attributable to her mental impairment rather than

her own personal preference, and it was reasonable for the ALJ to conclude that the 'level or

frequency of treatment [was] inconsistent with the level of complaints.'") (quoting SSR 96-7p).

> Iglesias insists the ALJ should have obtained assistance from a medical expert.

> In some cases, it may be possible, based on the medical evidence to reasonably
> infer that the onset of a disabling impairment(s) occurred some time prior to the
> date of the first recorded medical examination, e.g., the date the claimant stopped
> working.  How long the disease may be determined to have existed at a disabling
> level of severity depends on an informed judgment of the facts in the particular
> case.  This judgment, however, must have a legitimate medical basis.  At the
> hearing, the ALJ should call on the services of a medical advisor when onset must
> be inferred.

SSR 83-20, 1983 WL 31249 (Jan. 1, 1983).  Iglesias acknowledges this ruling applies to onset

dates, but argues the same logic serves here, arguing the evidence supports a finding of

longstanding impairments.  As a result, she contends, an expert should sort out how much of her

mental health impairments are due to her felony as opposed to the other traumatic events in her

life.

> I do not see the need for a medical expert's testimony.  "The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."

*Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  The ALJ here relied on Dr.

Truax's unambiguous opinion that Iglesias' depression was precipitated by getting caught

embezzling, the similar opinion of state agency physician Robert Henry, Ph.D., Iglesias'

treatment records in which her embezzling activities were a primary topic of discussion, as well

as Iglesias' 13 year work history prior to getting caught.  The ALJ was able to make this

determination from the available records and did not require the assistance of a medical expert.

Substantial evidence supports the ALJ's conclusion.

Iglesias also points to *dicta* from the first ALJ's decision, in which the ALJ directed the

medical record be explored.  The first ALJ commented,

> The claimant testified that although she was convicted of aggravated theft in 1996
> or 1997, she has a history of mental and physical abuse and her mental
> impairments existed prior to and apart from her conviction for embezzlement.
> While is it [sic] not clear that this issue is before me, I note claimant's
> impairments do not appear felony related and this should not be a basis for failing
> to evaluate all the medical evidence, including the new and material evidence
> received at the hearing level.

Tr. 29.  As the Commissioner notes, however, the issue of whether the impairment was felony-

related was not before that ALJ.  Only in the March 13, 2014 decision did the ALJ examine the

entire medical record.

Finally, Iglesias argues the ALJ improperly analyzed her impairments, failing to consider

the whole person and how much of her functional limitations were unrelated to the felony.  I see

no error.  The regulation directs the ALJ to exclude from his assessment any "physical or mental

impairment, or any increase in severity (aggravation) of a preexisting impairment, which arises in

connection with your commission of a felony[.]"  As the ALJ discussed, even if Iglesias suffered

anxiety and depression prior to being confronted about her embezzlement activities, substantial

evidence supports the ALJ's conclusion that her impairments were aggravated by her arrest and

conviction.  There is insufficient evidence to support a finding that absent the aggravating

symptoms, Iglesias would be disabled.

Page 9 - OPINION AND ORDER

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this _____28th_____ day of March, 2016.


                                              /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge